### The Ray Schools–Chicago, Inc., Appellee, v. City of Chicago, Appellant.

### Gen. No. 44,664.

Opinion filed March 1, 1949. Released for publication May 9, 1949.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, by L. LOUIS KARTON, Assistant Corporation Counsel, for appellant; L. EDWARD HART, JR., CHARLES O. PARKER and EDWARD MCCAUSLAND, all of Chicago, of counsel.

EDWARD P. MCKEOWN, JAMES C. O'BRIEN and RAYMOND J. BOLAND, all of Chicago, for appellee.

Mr. Justice Scanlan delivered the opinion of the court.

The Circuit court of Cook county entered a judgment order in the instant case permitting plaintiff to use property owned by it at 1551 North Astor street, Chicago, for school purposes, directing the City of Chicago, defendant, to issue any and all permits to which plaintiff would be entitled under the building regulations of Chicago for the purpose of remodeling the property to adapt the same for school purposes and enjoining the City of Chicago and its officials from enforcing that portion of the Chicago zoning ordinance insofar as it prohibits plaintiff from using the property in question for the purpose of operating a school of the type presently operated by plaintiff. City of Chicago appealed to the Supreme court from the judgment order, but allowed counsel for the property owners on Astor street to take over "the work of making the appeal, writing the briefs and abstracts." The appeal was taken to the Supreme court upon the assumption that a constitutional question was presented in the case, but that court held (*Ray Schools-Chicago v. City of Chicago,* 400 Ill. 539) that there was no constitutional question properly presented in the case, and transferred the cause to this court. The opinion of the Supreme court states the pleadings, the evidence, and also the contentions raised by the parties in that court, and we need not repeat them here. The opinion states (p. 544) that "the order from which this appeal follows did not expressly find, order and declare that the zoning ordinance was invalid as applied to these premises." Plaintiff filed notice of cross-appeal and contends that the trial court actually found that the zoning ordinance insofar as it applied to plaintiff's property was void, and that if it had not been for fears expressed by the attorney for defendant that serious consequences would follow to the property owners living on Astor street if the court held the ordinance in-

valid, that finding would have been the basis of a judgment order. It is clear that this contention finds support in the record. After plaintiff had concluded its evidence and the court had denied the motion of the City for a finding for defendant the City rested without offering any proof. In deciding the case the court delivered a lengthy opinion and we deem it pertinent to state certain parts of it, as follows:

"The Court: . . . But if one block can be isolated from the rest of the entire neighborhood where no reasonable relationship can be shown between that discrimination and the general public interest or the police power, no relationship—health, morals, safety, or otherwise—why, then the zoning ordinance will become a racket, the zoning law. . . . Individuals will start pulling strings, not for the purpose of carrying out the intention of the zoning law, but for their own private gain.

". . .

"Mr. Nathanson [attorney for defendant]: *Council in its wisdom zoned Astor Street for that block for single family residences.*

". . .

"The Court: . . . Here is a vast portion of the City of Chicago, located almost precisely as the piece of property in question is, both in relationship to transportation, proximity to the Loop, desirability for residential purposes, and out of this vast area one street, not a block in the sense as we understand it, a square block, but one street, an isolated single street is zoned for a purpose other than that which the rest of the area is zoned. The purpose is very limited and highly restricted, only a single [family] residence can be built. The remaining property, consisting of a large number of square blocks, is like the block in question, or the street in question, mainly occupied by single residences and has been so for many, many

years, and yet the Council found no reason apparently for maintaining that character.

"... .

"The Court: . . . Here we have a piece of property facing North Avenue. To the east and to the west of it the property is zoned for apartment building purposes. It alone of all the property facing North Avenue, which has been shown here as a very busy thoroughfare, and where literally thousands of people pass on certain days because it faces the park and is an important artery leading to the bathing beaches, this isolated piece of property, or the owner of that piece of property has been told, 'All your neighbors situated as you are along this particular street may use their property so as to get out of it the highest and best use. You, and you alone, are restricted in a use which has virtually become obsolete.'

"... .

"The Court: . . . I find nothing in the evidence before me that establishes the slightest relationship with the morals, safety, and health of the community or the general public welfare, but I do find from the evidence that the zoning of this piece of property for so restricted a use, as the ordinance provides, is a discrimination against the owner of this property amounting to a confiscation.

"From the evidence before me—I was about to say that I could almost take judicial notice—from the evidence before me it is clear that unless better use could be made of this particular property than a single residence it becomes virtually worthless to the owner. Who, with the capacity of owning a twenty-five room residence, would select this spot facing North Avenue at that particular place; who would select that spot knowing that all the property surrounding them, except to the rear of them, might any day be converted into enormous apartment houses?

"That there is a trend toward building apartment houses within the city, and even to the extent that residences are built within the City, to build smaller residences which can be maintained at a reasonable rate, none can possibly question.

"There are those who can afford to live in luxury and maintain enormous establishments; even maintain residences of the size and cost as this one, but we know from every day experience that those are built in the suburbs away from the busy thoroughfares, and from the business districts of the city. The only conceivable reason that I could imagine for zoning this isolated spot as it was would be a certain number of rich people have a particular street on which they would like to live undisturbed in their seclusion and in their luxury, undisturbed by anything whether it has a relation to the common good or not, and for some reason or other they seem to have succeeded in acquiring this special privilege.

". . .

"The Court: I am considering the evidence before me and I am simply drawing upon my own mental capacity for reasoning the situation. I have no other way of determining what was in the mind of the legislative body. Certainly the effect of this ordinance is that and nothing more. And if that were to be sustained by the courts, what a mockery this whole zoning business would become. Given sufficient influence with the legislative body, a group of owners, for the sole purpose of serving their convenience and their special interests, would succeed in having their property zoned in such a way that it would be entirely out of character with all the surrounding property, to the detriment, it would appear even, to other owners surrounding the property, as in this case it does appear. Here is a building that would cost three hundred thousand dollars to replace, would have a value of a hundred thousand dollars as it is today, would be rendered virtually

worthless despite the fact that the witness testified that it has a value of sixty thousand dollars—he has clearly indicated that he just fixed that arbitrarily—and that there is no demand for any such property for residential, for single residential purposes. The value depends upon the demand, as to what people would be willing to offer to pay for it in an arm's length bargain, so that my construction of his evidence must mean that even if a buyer were to be found it would have no greater value than sixty thousand dollars.

"Now, is it possible that the courts would stand by and allow the zoning power of a city to become so perverted that, for the sole purpose of preserving to a few owners of luxurious residences the character that they desire to have maintained, special ordinances could be adopted? Even when, because of that, surrounding properties would be destroyed in value.

"*I am not going to pass upon the validity of the ordinance as it affects the entire street, although I am frank to tell you that if I were I would be forced to the conclusion that it is unreasonable, capricious, discriminatory and has no relationship to the public welfare.*

"*I am only going to hold that as to this particular piece of property the ordinance is so unfair and unreasonable, so arbitrary and capricious, bearing no relationship to the public health, safety, comfort and welfare, and is therefore void. That will be the Court's*—[ruling]

"Mr. Nathanson: Now, if your Honor holds the ordinance is void, *then where is the property?*

"The Court: That is why I didn't discuss the question of whether or not this is a corporation not for profit, because it doesn't make any difference.

"Mr. Nathanson: *I think some declaration should be made with reference to how the property is to be used, because if there is no ordinance, they could put a grocery store there.*

"The Court: Gentleman, I am not the zoning authority and I am not attempting by this declaration—

"Mr. Nathanson: Wouldn't we then have an erroneous ordinance? Which one is void?

"The Court: *The ordinance as it is now in force, as it relates to this particular piece of property in question before me, is void.*

"(Discussion off the record.)

"The Court: In a discussion off the record, which should really be for the record, *it was pointed out by the attorney representing the City that serious consequences might flood from the Court's holding the ordinance invalid.* I am quite willing to limit whatever order is entered here to the piece of property in question here alone, and to the prayer that the Court declare that the plaintiff here may have the use of this property for its school purposes. I move to do that by the consideration that if the Court goes beyond that a manufacturing establishment might be put upon the property.

"And so if, without prejudicing the rights of the City to appeal from the Court's decision, it will agree that if the plaintiff has a right to maintain the school here the order should be limited to that right only, I will enter such an order.

"Mr. Nathanson: That is without prejudice to the City's right to appeal from the Judge's findings that the action of the Council was capricious, the City will agree that if the Court is sustained that then the plaintiff would have a right to conduct a school.

"The Court: No, put it the way I put it.

"If I had the authority to resolve I would say this property should be zoned for this school purpose, or for apartment building purposes, so as to be in harmony with all the surrounding property. I have no such right. I have only a right to determine that the ordinance is valid or invalid so far as this piece of property is concerned.

"Mr. Nathanson: The original ordinance doesn't help us much here.

"The Court: I am talking only of the ordinance as it now stands. For that reason I say, *to protect the property from any other use except this school,* this being a declaratory judgment, actually, I shall merely declare in favor of the rights of the plaintiff as it prays in its complaint, leaving the question of any other use of this property for future consideration if and when that question might arise.

"Now, if that is agreeable to you I will enter such an order without prejudice to your right to appeal, save this, that in the appeal you promise not to make a point of the fact that by finding the particular use to which the plaintiff is entitled the Court was acting as a zoning authority. You see, I am not going to put myself in a position where the City on appeal will say, 'This amounts not to a declaration of validity or invalidity of an ordinance, but of a usurpation of authority to zone this for a school purpose or for—.'

"(Discussion off the record.)

"The Court: I shall have no hesitancy in entering an order which would simply declare the right of the plaintiff to use this property as its school, without finding anything more, provided I am assured that on appeal the point will not be made that this amounted to zoning by the Court.

"Mr. Nathanson: I can't speak for the—

"The Court: Take it up with them and then prepare your order.

"Mr. Nathanson: All right."

The following statement in the opinion of the Supreme court in this case (p. 543) so tersely and clearly sets forth certain important facts that bear upon the validity of the ordinance in question that we insert it here:

"The record clearly indicates that the particular portion adjoining Astor Street upon which these

premises are situated is the only section zoned for single family residence use in the area from Roosevelt Road on the south to North Avenue on the north and from the lake on the east to Western Avenue on the west, an area comprising approximately twelve square miles. It further appears that the property located immediately to the east of this property and separated only by a 15-foot alleyway is zoned for apartment house use. The property immediately to the west of plaintiff's property and separated by a 20-foot street is likewise zoned for apartment house use. This portion of plaintiff's property which has a frontage on North Avenue is the only piece of property on North Avenue zoned for single-family residence use for a distance of over nine miles. Testimony shows that there is literally no demand for buildings, such as the one in question, to be used solely as single-family residences and that the street in question is not a quiet residential street but is a main thoroughfare with considerable traffic thereon.''

The City admits the accuracy of the foregoing statement.

In the instant case a capable and experienced judge, after he had delivered an able and exhaustive opinion, held: ''. . . as to this particular piece of property the ordinance is so unfair and unreasonable, so. arbitrary and capricious, bearing no relationship to the public health, safety, comfort and welfare, and is therefore void. That will be the Court's—[ruling].'' But the attorney for the City refused to accept defeat, continued to argue with the court, and adroitly injected into the argument a new point, viz., that if the court held the ordinance invalid serious consequences to the property owners on Astor street might flow from that holding. Against his judgment, the court permitted a discussion ''off the record,'' and it is clear that the court was unduly influenced by the argument of the attorney for the City, and as a result the judgment order in question was entered. It is also reasonably

clear that the court assumed that the judgment order entered would satisfy the City and plaintiff. The attorney for the City, after the court had first ruled, stated to the court that he thought *"some declaration should be made with reference to how the property is to be used, because if there is no ordinance, they could put a grocery store there,"* and the court stated that he was moved to follow the suggestion of the counsel by the fear, entirely unwarranted, we think, in view of the nature of the judgment order the court intended to enter, that *"a manufacturing establishment might be put upon the property"* if the ordinance was declared invalid. *A fortiori*: The court was fully cognizant of the provisions of the zoning ordinance of April 5, 1923, as amended, and knew that as plaintiff's premises were zoned as a single-family residence the judgment order that was finally entered could not stand if properly questioned. There is force in the contention of plaintiff that the judgment order entered was the result of the argument and statements made to the court by defendant's counsel that serious consequences to the properties on Astor street would follow if the ordinance in question were declared invalid. The court knew that the controlling question in the case is, Is the zoning ordinance as amended valid or invalid insofar as plaintiff's property is concerned? Defendant's contention that the court erred in entering the judgment order in question is, of course, a meritorious one, if we assume, as we may for the purposes of this appeal, that defendant did not request or approve it. Plaintiff contends that the court should have entered a judgment order finding that the Chicago Zoning Ordinance, as amended, insofar as it pertains to plaintiff's property, is arbitrary, unreasonable, capricious, and void, and asks us to reverse and remand the cause with directions to the trial court to enter a judgment that will so hold.

It is our conclusion that the judgment order should be reversed and the cause remanded with directions

to the trial court to pass upon the controlling question in the case, viz., Is the Chicago Zoning Ordinance, as amended, insofar as it pertains to plaintiff's property, arbitrary, unreasonable, capricious, and void, and to then enter a judgment order in accordance with its answer to the foregoing question.

The judgment order of the Circuit court of Cook county is reversed and the cause is remanded with directions.

*Judgment order reversed and cause remanded with directions.*

SULLIVAN, P. J., and FRIEND, J., concur.